UNITED STATES BANKRUPTCY  COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| READING BROADCASTING, INC. | : | |
| Debtor | : | Bankruptcy No. 05-26563bif |
| _____ | | |
| GEORGE L. MILLER, trustee | : | |
| Plaintiff | : | |
| v. | : | |
| MICHAEL L. PARKER, SR.; PARTEL, INC.; IRVIN COHEN; ROBERT E. REITH; JACK A. LINTON; GEORGE A. MATTMILLER; LEONARD B. STEVENS; SOT, INC.; SWOB; BERNARD R. GERBER; HELENE ASSOCIATES, L.P.; ROGER N. LONGENECKER; and ESTATE OF ROBERT H. CLYMER | : : : : : | |
| Defendants | : | Adversary No. 06-0643 |
| _____ | | |

..................................................

MEMORANDUM

..................................................

     The chapter 11 trustee, George L. Miller, commenced an adversary proceeding by filing an amended complaint consisting of 345 paragraphs, asserting 19 counts against 13 defendants, and seeking in excess of $20 million in damages.  As will be discussed, the trustee alleges that these defendants participated in, or were the beneficiaries of, improper actions by the directors of Reading Broadcasting, Inc. over a period of almost 20 years.

Six of those defendants have filed motions to dismiss numerous counts of the amended complaint, and one defendant has filed a motion for judgment on the pleadings. These defendants all maintain, inter alia, that the statute of limitations has expired for many of the claims, that the business judgment rule insulates their actions from challenge, and that in many instances the trustee has failed to state any cause of action against them.

The trustee opposes dismissal of any claim against any of these seven defendants. He argues that his amended complaint complies with the liberal notice-pleading requirements of Fed. R. Civ. P. 8. Furthermore, the trustee maintains that he sufficiently invoked the doctrine of adverse domination in his amended complaint, which would toll any applicable statute of limitation that may have otherwise expired. Finally, he takes issue with the application of the business judgment rule and with the assertion that the debtor's bylaws preclude relief.

The parties have submitted memoranda in support of their respective positions and have orally argued their contentions. Thereafter, the trustee filed a motion to approve a settlement of this proceeding, as required by Fed. R. Bankr. P. 9019. Certain objections to the proposed settlement were filed. Just prior to the continued hearing on this settlement motion, the trustee withdrew his request for approval of the settlement explaining that certain preconditions to settlement had not been met.[1]

In addition, certain defendants have demanded a right to trial by jury in this proceeding and did not consent to my presiding over that trial. See 28 U.S.C. § 157(e).

---

[1]Thereafter, counsel for defendants Micheal Parker and Partel, Inc. sought and was granted leave to withdraw as counsel. Partel and Parker were afforded an opportunity to engage replacement counsel but have not done so.

2

Consistent with this position, they filed a motion with the district court to withdraw the

reference in this adversary proceeding, pursuant to 28 U.S.C. § 157(d) and Beard v.

Braunstein, 914 F.2d 434 (3d Cir. 1990). The district court thereafter denied that motion

without prejudice, directing that this bankruptcy court oversee all pretrial matters.

Accordingly, as authorized by the district court, I shall determine the various pending

motions.[2]

   While these dismissal motions were pending, the trustee was able to

confirm a chapter 11 plan of liquidation,[3] which plan is highly unlikely to provide for any

distribution to RBI's shareholders (unless the trustee prevails in this litigation and is able

to recover the amount of damages sought in his complaint). Under the terms of the

confirmed plan and confirmation order, parties in interest were given a deadline to file

requests for payment of administrative expenses under 11 U.S.C. § 503(a). SOT, Inc. has

made such a request, to which the trustee has filed an objection. The trustee's objection

to this administrative expense request raises many of the same claims as are asserted

against SOT, Inc. in this adversary proceeding. As an evidentiary hearing involving

SOT's request for an administrative expense has commenced and SOT's administrative

expense rights will be adjudicated therein, I shall defer ruling on SOT's motion to dismiss

---

[2]In litigation involving multiple claims or parties, the various claims must be
analyzed for bankruptcy jurisdictional purposes on a claim by claim basis. Halper v. Halper, 164
F.3d 830, 837 (3d Cir. 1999). If dismissal is warranted as to non-core claims, I shall only render
a recommendation to the district court. Denial of a motion to dismiss is interlocutory and can be
issued by a bankruptcy judge even as to non-core matters. See In re Quality Care Medical
Equipment Co., Inc., 92 B.R. 117, 123 (E.D. Pa. 1988); In re Almasri, 378 B.R. 550, 553-54
(Bankr. N.D. Ohio 2007); see generally In re Montgomery Ward & Co., Inc., 428 F.3d 154, 160
n.12 (3d Cir. 2005).

[3]The confirmation order is presently on appeal.

the claims against it to the extent its dismissal motion in this proceeding may be resolved by preclusion principles.  See In re Downing, 2005 WL 3299797, at *1 n.1 (Bankr. D. Kan. 2005); see also In re North Mandalay Investment Group, Inc., 342 B.R. 846, 847 (Bankr. M.D. Fla. 2005).

I.

I shall first attempt to summarize the allegations of the trustee's lengthy amended complaint, as he incorporates them all into his 19 causes of action.  The trustee makes the following assertions:

The debtor, Reading Broadcasting, Inc. ("RBI"), is a Pennsylvania corporation located in Reading, Pennsylvania.  RBI owns and operates WTVE-TV 51, an independent commercial television station serving the city of Reading, as well as Philadelphia, Pennsylvania; Wilmington, Delaware; and the Delaware River Valley. Complaint, at ¶ 2.  RBI filed a voluntary petition for bankruptcy on October 7, 2005.  The chapter 11 trustee was appointed on January 17, 2006.

In accordance with FCC regulations, RBI entered into a lease agreement with the City of Reading on July 25, 1979.  Amended Complaint, at ¶¶ 85-87.  Under this agreement, the debtor leased land, which included a building for RBI operations as well as a cement tower platform, and is referred to as the Mt. Penn site in the amended complaint.  Id.  The initial term of the lease was 15 years, commencing on April 1, 1980, at an annual rent of $500/year adjusted annually in an amount equal to the increase in cost of living.  Id., at ¶ 90.  RBI entered into this Mt. Penn lease agreement in order to obtain a

4

site to transmit its analog television signal.  Id., at ¶ 91.  A transmission tower was constructed on this site.

On September 25, 1986, an involuntary bankruptcy petition was filed against RBI, which resulted in the issuance of an order for relief under chapter 11 of the Bankruptcy Code on October 28, 1986.  Id. at ¶ 92.  During those previous bankruptcy proceedings, RBI entered into a management services agreement ("MSA") with Partel, Inc.  Id., at ¶ 93.  Partel, Inc. is a corporation wholly owned by defendant Micheal Parker, and from time to time it was a shareholder of RBI.  Id., at ¶¶ 21-22.  Mr. Parker serves as Partel's president.  Id.  Under the MSA, Mr. Parker and Partel were given full authority to conduct the operations of RBI for a period of 31 months, ending on December 31, 1991. Id., at ¶ 94.  The MSA provided that Partel would receive 25% equity interest in RBI upon confirmation of a plan of reorganization and 25% of RBI's monthly net revenues. RBI's obligation to pay Partel 25% of its monthly net revenues was contingent upon RBI being "current in its payments of principal and interest to Meridian Bank as required in the Loan Documents."  Id., at ¶ 97.

Shortly after the MSA was executed, Mr. Parker became executive vice president and chief operating officer of RBI, and still later, president, an RBI director, and an RBI shareholder.  Id., at ¶ 95.  The MSA provided that neither Partel nor Mr. Parker was entitled to additional compensation as a result of Mr. Parker being an officer of RBI; however, RBI was obligated to reimburse Partel for reasonable expenses incurred or paid by Partel in performance of Partel's obligations under the MSA.  Id., at ¶ 99-100.

On or about January 20, 1991, the bankruptcy court approved RBI's Fourth Amended Plan of Reorganization.  Id., at ¶ 102.  Pursuant to the confirmed plan, Partel

5

received 124,042 shares of RBI stock, with an alleged value of approximately $3.7 million. The trustee further alleges that sometime thereafter Mr. Parker received an additional 269,278 shares of stock, with an alleged value exceeding $2.5 million. Id., at ¶ 103-104. The trustee asserts that all of the stock received by Partel was subsequently transferred to Mr. Parker. Id., at ¶ 105. It is further averred that none of the defendants took steps to ensure that these stock transfers were recorded on RBI's corporate books. Id., at ¶ 106.

The trustee contends that, notwithstanding the MSA, Mr. Parker received at least $400,000 from RBI in consulting fees, $309,000 in reimbursement fees for travel and entertainment expenses, and $232,000 in reimbursement fees for other expenses, through the end of 2005. Id., at ¶ 107. Further, the amended complaint asserts that at all times when payment was made to Partel under the MSA, RBI experienced a negative cash flow and was delinquent in its loan payments to Meridian Bank. Id., ¶ at 109.

On May 1, 1991, RBI and the City of Reading executed a second lease agreement for the Mt. Penn site. The second agreement was for a term of 19 years and commenced on May 1, 1991. Id., at ¶ 110. Under this second lease, RBI was to pay an annual rental fee of 5% of the gross revenues it realized from various licensing agreements for space on Mt. Penn Tower. Id., at ¶ 111. RBI's projected gross income from its licensing agreements was $30,490 for 1990 and $40,080 for 1991. Id., at ¶ 112.

In August of 1991, RBI assigned its interest in the Mt. Penn lease with the City of Reading to SOT, Inc. SOT, Inc. is a Pennsylvania sub-chapter S corporation with its principal office located at 152 North Sixth Street, Reading, PA. Id., at ¶ 13. SOT's shareholders are defendants Jack A. Linton, Irwin Cohen, Mr. Parker, the Estate of

6

Robert H. Clymer, Bernard R. Gerber, and Roger N. Longenecker. Id., at ¶ 14. By

October 1991, SOT's shareholders made up a majority of the RBI board of directors. Id.,

at ¶ 139. The assignment agreement between RBI and SOT also called for the execution

of a Tower Site license agreement, under which RBI would assign to SOT RBI's right to

use the Mt. Penn Tower.

As a consequence of the Tower Site license agreement, RBI would pay SOT

a monthly rental fee for RBI to use the Mt. Penn Tower beginning on March 1, 1992. Id.,

at ¶ 116. The assignment agreement included an option for RBI to repurchase all rights

assigned within a period of two and a half years from the date of closing; however, this

option was never exercised. Id., at ¶ 119, 141. SOT promised to pay $200,000 to RBI in

return for the assignment, which funds were "allegedly needed for RBI to pay off certain

of its administrative creditors [from its first bankruptcy filed on September 25, 1986] and

was not based on any independent appraisal of the interests being assigned." Id., at ¶ 122.

The trustee alleges that SOT paid RBI only $175,000 of the $200,000 originally

promised.

The trustee then asserts that all of SOT's profits from the assignment

agreement with RBI were transferred to its shareholders. Between 1992 and October 7,

2005, RBI purportedly paid SOT license fees in the amount of $782,916.36, almost four

times the contracted repurchase price of $200,000. Id., at ¶ 142.

In 1994, the Federal Communications Commission received a challenge to

RBI's license renewal because of questions raised about the qualifications of Mr. Parker.

The FCC challenge was not resolved until 2004. During this time, in December 1995,

RBI's directors approved the purchase of real estate in Earl Township, PA ("Fancy Hill"). RBI intended to construct a new transmission tower on the site. Id., at ¶ 148.

By June 1996, RBI had not yet paid in full the administrative creditors from its 1986 bankruptcy case. Around this time, defendants Parker, Cohen, Clymer, Linton, and Longenecker formed a new corporation: SWOB, Inc. Id., at ¶ 151. In June 1996, RBI borrowed $185,000 from SWOB at 8% interest. The trustee alleges that "as a bonus, and for no consideration, at or about this same time" RBI transferred 80,000 shares of its stock to SWOB. Id., at ¶ 153. This transfer was recorded on RBI's books as having a value of $119,463. The trustee avers that the fair market value of the stock at that time was actually over $1.7 million.

The trustee contends that SWOB agreed to be responsible for constructing the new tower at the Fancy Hill site, with RBI solely responsible for advancing the construction costs. After 1996, RBI spent $222,286 on site preparation costs for the Fancy Hill Tower. The tower was never constructed, however, as RBI was legally enjoined from doing so due to zoning issues. The trustee alleges that the defendants improperly failed to examine whether building a transmission tower on the Fancy Hill site was a conforming use under local land use ordinances. Id., at ¶ 158. He further contends that SWOB never reimbursed RBI for the costs it incurred in conjunction with the Fancy Hill site preparation.

In September 1996, RBI hired Thomas L. Root as Director of Special Projects. Mr. Root was responsible for financial reporting. Apparently, before RBI hired him, Mr. Root allegedly had pled guilty in 1992 to forgery, filing false public records, theft and fraud. He had also pled no contest to securities violations and racketeering. Id.,

8

at ¶ 167.  Moreover, Mr. Root allegedly spent time in prison for his participation in a radio licensing scheme, which scheme resulted in certain investors losing thousands of dollars.  Mr. Parker allegedly was aware of Mr. Root's past misconduct when he was hired by RBI.  Id., at ¶ 168.  When Mr. Root was hired, RBI did not have any officer and director liability insurance.  Indeed, RBI did not have any officer and directory liability coverage until 2001.  Id., at ¶ 170.

In June 1998, RBI and Telemundo entered into an affiliation agreement. Around that time, SOT renewed and extended the lease for the Mt. Penn site with the City of Reading.  In July 1998, SOT and RBI executed a new Tower License Agreement.  This agreement had a term of 12.5 years.  The new agreement established a monthly increase in license fees beginning in 2003.  The fee would be the greater of 5% or the increase in CPI, capped at 8%.

On October 15, 1999, RBI terminated the Telemundo agreement in favor of executing a Time Brokerage Agreement with Philadelphia Television Network ("PTN"). Id., at ¶ 179.  As a result of the termination, Telemundo sued RBI for breach of contract. This lawsuit was eventually settled for $1 million owed by RBI.  Id., at ¶ 191.

RBI's board of directors ultimately authorized termination of the PTN agreement in August 2001.  Id., at ¶ 190.  The trustee alleges that in doing so, the individual defendants failed to exercise reasonable care in derogation of their fiduciary duties.  Id., at ¶ 191.  PTN sued RBI for breach of contract.  This suit was tried in state court and PTN was awarded $8,314,863.41 in damages.  The state court also ruled that termination of the Time Brokerage Agreement breached a separate stock option agreement between the parties, and that PTN was entitled to an undetermined amount of

9

damages as a result.  PTN has filed a proof of claim in the debtor's current bankruptcy in

the amount of about $20 million.[4]

In April 2001, an administrative law judge denied RBI's application to

renew its FCC license.  Id., at ¶ 183.  The judge found that Mr. Parker was "[n]ot

[q]ualified to hold or control a broadcasting license allotted to Reading Broadcasting,

Inc."  Id., at ¶ 184.  In May 2001, the MSA with Partel was terminated and Mr. Parker

resigned his positions as RBI's president and director.  Id., at ¶ 187.  RBI was represented

by the law firm Holland & Knight in the FCC litigation.  Id., at ¶ 201.  That firm was

owed approximately $380,000 in legal fees.  Id.  Holland & Knight offered to

compromise its fees to $205,000 if paid before June 30, 2004, to $225,000 if paid before

December 31, 2004, and to $275,000 if paid thereafter.  Id.  RBI borrowed money from

Messrs. Cohen (through Helene Associates), Linton, and Clymer to repay Holland &

Knight.  Id., at ¶ 202-03.  This loan included a 16% penalty if not repaid by June 30,

2005, and an additional 13% penalty if not repaid by December 31, 2005.  Id., at ¶ 204.

When Mr. Parker stepped down from RBI's board, Frank McCracken

became RBI's president.  Id., at ¶ 187.  Mr. McCracken was eventually indicted by the

United States Attorney in a federal corruption probe.  Id., at ¶ 196.  The trustee alleges

that the United States discovered that Mr. McCracken, and others, had illicitly secured

commissions from RBI which were not properly recorded in RBI's books or on

McCracken's federal tax returns.  Id.  After Mr. McCracken's indictment, he resigned

from RBI's board and Mr. Parker was reappointed.  Id., at ¶ 198.  It was also around this

---

[4]The trustee has filed an objection to this claim, which objection is pending.

time that RBI purportedly authorized Partel to resume providing management services
effective March 2005.  Id.

RBI entered into a separation agreement with Mr. McCracken.  Id., at 205.
Under that agreement, Mr. McCracken surrendered 12,381 shares of RBI stock, which the
trustee values at $15.38/share.  Id., at ¶ 207.  The trustee alleges that this transaction
resulted in a $192,250 credit in favor of Mr. McCracken against the hundreds of
thousands of dollars he allegedly stole from RBI.  Id.  On December 8, 2004, Mr.
McCracken pled guilty to all 13 criminal charges brought against him.  Id., at ¶ 209.
Under the terms of the separation agreement, and after the guilty plea was entered, RBI
paid to Mr. McCracken the last three months of his 2004 salary in the amount of $17,365,
$2,168 for his car, and $1,570 for health and automobile insurance.  Id., at ¶ 210.

On or about January 1, 2005, SOT and RBI entered into an amendment to
the 1998 Tower license agreement.  Id., at ¶ 213.  This amendment provided for monthly
license fees payable to SOT in the amount of $8,103.38 for 2005, and then an annual
increase in the license fees thereafter of the greater of 5% or the increase in the CPI,
without a cap.  Id.

The trustee further alleges that as a result of the Holland & Knight
borrowing, as well as the Telemundo and PTN litigation losses, RBI could not meet its
ordinary business expenses.  Id., at ¶ 215.  RBI then borrowed $110,000 from Helene
Associates.  Id., at ¶ 216.  The agreement contained a confession of judgment clause and
a rate of interest of 29%.  Id.

In July 2005, the SWOB promissory note became due.  Id., at ¶ 218.  There
was $285,707.41 due and owing on this obligation, which sum included interest.  Id.

11

According to the trustee, that sum did not take into account the $222,286 RBI advanced

for construction at the Fancy Hill site on SWOB's behalf.  Id.  RBI executed a

replacement note in favor of SWOB for the amount due and owing, with an interest rate

of 9.7%, which the trustee claims was above the market rate.  Id., at ¶ 219.  The trustee

avers that in the period between October 7, 2004 and October 7, 2005, SWOB was paid

$39,245 on these notes and that Mr. Cohen, through the Cohen Group, was paid $2,610.

Id.

On October 5, 2005, RBI executed a new management services agreement

("MS2") with Partel, which resulted in payments to Partel in the amount of $203,066.92

in the year before the filing of the bankruptcy petition.  Id., at ¶ 223.  The trustee alleges

that in violation of MS2, Partel received post-petition payments in the amount of $60,000,

which were ultimately transferred to Mr. Parker.  Id., at ¶ 224.  The trustee further avers

that these postpetition payments were improper.  Id., at ¶ 226.


II.


From these allegations, the trustee asserts the following 19 causes of action.

Count I asserts a breach of fiduciary duty under Pennsylvania law, 15 Pa. C.S.A § 1713(a)

and § 1553(a).  This count is raised against defendants Parker, Cohen, Reith, Linton,

Mattmiller, Stevens, and the Estate of Clymer, all of whom served as directors of RBI,

and the trustee demands more than $20 million in damages.  Count II, styled Breach of

Duty of Loyalty and Confidential Relations and Self-dealing, and Count III, styled Waste,

appear to be alternatives to Count I, as they are raised against the same defendants, based

upon the same state statutes and factual assertions, and seek the same monetary relief.

Essentially, all three causes of action aver that the defendants are liable to the bankruptcy

estate because, as officers or directors of RBI, they diverted the debtor's assets, corporate

rights and/or interests to other entities with which they held an interest, and/or paid

excessive fees to those other entities, issued corporate stock of the debtor for little or no

consideration, allowed debtor funds to be diverted without reimbursement, and exercised

improper oversight of the debtor's business records and assets.

Count IV raises a claim for recovery of an allegedly fraudulent conveyance

under Pennsylvania law (through section 544 of the Bankruptcy Code) and 11 U.S.C. §

548 against defendants Parker, Cohen, Reith, Linton, Mattmiller, Estate of Clymer, Partel

Inc., SWOB Inc., and Gerber.  The purported fraudulent conveyance concerns the transfer

of RBI shares of stock, and the trustee seeks recovery of stock shares.

Count V raises a fraudulent conveyance claim against Mr. Parker and

Partel, Inc. under state and federal law.  Based upon earlier averments, the trustee

contends that RBI made fraudulent payments prepetition totaling $330,561.05 to these

two defendants.

Count VI asserts that RBI made post-bankruptcy transfers totaling $60,000

to defendants Parker and Partel, Inc., which transfers were not authorized under 11 U.S.C.

§ 327 and Local Bankr. R. 4002.1(b).[5]

Count VII alleges that defendants Parker and Partel received preferential

transfers totaling $203,066.92 within one year of the bankruptcy filing, and that both

---

[5]This claim may be based upon section 549.  See In re APF Co., 264 B.R. 344,
360 (Bankr. D. Del. 2001).

defendants were insiders of the debtor.  Relief is sought under sections 547 and 550 of the Bankruptcy Code.

Count VIII asserts fraudulent conveyance claims against defendants Parker, Cohen, SOT, Inc., Linton, Gerber, Longenecker and the Estate of Clymer, again under federal and state law.  The trustee alleges that prepetition payments made by RBI pursuant to license agreements with SOT, Inc. constitute fraudulent transfers under Pennsylvania and federal bankruptcy law totaling $1.5 million.  The trustee seeks damages in that amount plus invalidation of the assignment and license agreements with SOT, Inc.

In Count IX, the trustee maintains that defendants Parker, Cohen, SOT, Inc., Linton, Gerber, Longenecker and the Estate of Clymer were unjustly enriched under Pennsylvania law by RBI's improper payments to SOT, Inc.  This is an alternative theory to the claim made in Count VIII, and seeks the same relief.

In Count X, the trustee alleges that defendants Parker, Cohen, SOT, Inc., Linton, Gerber, Longenecker and the Estate of Clymer received $122,497.42 in payments from the debtor in the past year under SOT license agreements that were preferential under section 547, as all the defendants were insiders of the debtor.

In Count XI, directed only against SWOB, Inc., the trustee avers that SWOB failed to repay the debtor $222,286 for advanced construction funds on the Fancy Hill project.  The trustee maintains that SWOB was contractually obligated to the debtor to tender such repayment and breached its contract by failing to do so.  This is a state law claim.

14

Count XII constitutes a fraudulent conveyance claim against defendants Parker, Cohen, SWOB, Inc., Linton, Longenecker and the Estate of Clymer pursuant to Pennsylvania and federal bankruptcy law. The fraudulent transfers represent payments made to SWOB pursuant to a second promissory note. The trustee does not specify the amount of the alleged fraudulent transfer.

Count XIII is brought against the same defendants as Count XII, and simply represents an alternative claim under the state law theory of unjust enrichment. The trustee is seeking the same relief.

Count XIV is a preference claim against defendants Parker, Cohen, SWOB, Linton, Longenecker and the Estate of Clymer to recover prepetition payments made within one year on the SWOB promissory note, alleged to total $39,245. In addition, the trustee asserts as preferential $2,610 paid to defendant Cohen.

In Count XV, the trustee contends that defendant Parker converted estate property under section 542 by taking a laptop computer that contained "confidential RBI financial information." Amended Complaint, ¶ 324. The return of this computer with the information contained on its hard drive is demanded.

In Count XVI, the trustee avers that defendants Parker, Cohen, SOT, Linton, Gerber, Longenecker and the Estate of Clymer are liable to the debtor because SOT made use of debtor's employees and did not pay debtor for their services. The trustee demands an accounting for these services and recovery under unjust enrichment pursuant to state law.

In Count XVII, the trustee seeks the equitable subordination of unsecured claims filed in this chapter 11 case by SOT, SWOB, Helene Associates, Linton, and

15

Mattmiller under 11 U.S.C. § 510(c).  Count XVIII is purported to be an objection to the unsecured claims filed by these same defendants.

And finally, in Count XIX, the trustee demands the equitable subordination of equity interests of RBI shareholder defendants Parker, Partel Inc., Cohen, Reith, Linton, Mattmiller, SWOB, Gerber, Longenecker, and the Estate of Clymer, also under section 510(c).

III.

As noted at the outset, six defendants—Parker, Partel, SOT, Cohen, Helene Associates, and Reith—have filed motions to dismiss under Fed. R. Bankr. P. 7012. Defendant Stevens has filed a motion for judgment on the pleadings, also under Rule 7012.  Bankruptcy Rule 7012(b) incorporates Fed. R. Civ. P. 12(b)-(h).  These motions seek dismissal of the claims raised against those defendants.

A motion for judgment on the pleadings will not be granted "unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. . . .  [A court must] view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  Sikirica v. Nationwide Insurance Co., 416 F.3d 214, 220 (3d Cir. 2005); see, e.g., Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994); Institute for Scientific Information, Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1004 (3d Cir. 1991); Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980).  Thus, when a Rule 12(c) motion is made by a defendant, the standard by which a complaint is

16

evaluated is identical to the standard under Rule 12(b)(6).  See, e.g., Turbe v. Government

of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (holding that a Rule 12(c) motion for

judgment on the pleadings for failure to state a claim upon which relief can be granted is

analyzed under the same standard as a Rule 12(b)(6) motion to dismiss).

     Motions by defendants under the standard established by Fed. R. Civ. P.

12(b)(6) essentially test the legal sufficiency of the factual allegations contained within a

plaintiff's complaint.  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Whether

the trustee in his amended complaint has sufficiently stated a cause of action is governed

by Federal Rule of Bankruptcy Procedure 7008, which incorporates Fed. R. Civ. P. 8.

Rule 8 integrates a notice pleading standard, which  "requires only 'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355

U.S. 41, 47 (1957)); Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

The Supreme Court recently emphasized that while a complaint need not include detailed

factual allegations, it does need to go beyond "a formulaic recitation of the elements of a

cause of action. . . ."  Twombly, 127 S. Ct. at 1965.  "Factual allegations must be enough

to raise a right to relief above the speculative level."  Id.

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short
> and plain statement of the claim showing that the pleader is
> entitled to relief."  Specific facts are not necessary; the
> statement need only "'give the defendant fair notice of what
> the . . . claim is and the grounds upon which it rests.'"  Bell
> Atlantic Corp. v. Twombly, 550 U.S. —, —, 127 S. Ct. 1955,
> 167 L. Ed. 2d 929, — (2007) (slip op., at 7-8) (quoting
> Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d
> 80 (1957))  In addition, when ruling on a defendant's motion
> to dismiss, a judge must accept as true all of the factual

> allegations contained in the complaint.  <u>Bell Atlantic Corp.</u>,
> supra, at —, 127 S. Ct. 1955 (slip op., at 8-9). . . .

<u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  Not only are the

allegations in the complaint accepted as true in determining whether the plaintiff has

stated a cause of action, but those averments must be construed in a light most favorable

to the plaintiff.  <u>See</u>, <u>e.g.</u>, <u>Phillips v. County of Allegheny</u>, 515 F.3d at 233.

In ruling upon a Rule 12(b)(6) motion, the trial court's role is limited to

determining whether, based upon the allegations of the complaint, accepted as true with

all reasonable inferences, the plaintiff is entitled to offer evidence in support of the

claims, and not whether the plaintiff will ultimately prevail upon the merits.  <u>See</u>, <u>e.g.</u>,

<u>Unite Nat'l Retirement Fund v. Rosal Sportswear, Inc.</u>, 2007 WL 2713051, at *4 (M.D.

Pa. Sept. 14, 2007).  Resolution of that issue requires that the complaint contain sufficient

averments to provide fair notice to the defendant of the claims asserted, and that the

factual allegations suggest the required elements of the individual claims.  <u>Phillips</u>, 515

F.3d at 234-35.  This standard does not require that a plaintiff plead every fact upon

which his claim is based.  <u>See Erickson v. Pardus</u>, 127 S. Ct. at 2200.  The Rule 8

pleading standard merely requires that the plaintiff allege sufficient facts to warrant

engaging in discovery.  As the Third Circuit recently explained:

> The Supreme Court's <u>Twombly</u> formulation of the pleading
> standard can be summed up thus: "stating . . . a claim requires
> a complaint with enough factual matter (taken as true) to
> suggest" the required element.  <u>Id.</u>  This "does not impose a
> probability requirement at the pleading stage," but instead
> "simply calls for enough facts to raise a reasonable
> expectation that discovery will reveal evidence of" the
> necessary element. <u>Id.</u>

18

Phillips, 515 F.3d at 234.  In other words, the plaintiff must make a sufficient showing to justify moving to the next stage of litigation.  Phillips, 515 F.3d at 234-35.

The trustee also asserts various fraud claims under federal bankruptcy law and Pennsylvania law.  As noted by the moving defendants, the federal pleading requirements for fraud are somewhat more stringent than other types of claims.  The pleading of fraud is governed by Federal Rule of Civil Procedure 9(b) (incorporated by Fed. R. Bankr. P. 7009), which requires that a plaintiff expressly plead the facts surrounding each and every element of the cause of action "with particularity."  Fed. R. Civ. P. 9.  See Feldman v. Trust Co. Bank, 1993 WL 300136, at *3 (E.D. Pa. 1993) ("Combining the liberal requirements of notice pleading with the more demanding ones required for fraud, the court concludes plaintiff need not plead all the elements necessary to establish his causes of action, but where he makes allegations of fraud, those allegations must be pleaded with greater particularity.").

Nonetheless, application of Fed. R. Civ. P. 9(b) is not unrelentingly severe.  As a leading commentator explained: "Although a purpose of Rule 9(b) is to provide detailed notice of the circumstances constituting fraud, not every alleged misrepresentation need appear in the pleadings."  2 Moore's Federal Practice, ¶ 9.03[1][a] (3d ed. 2007) (footnote omitted).  The Third Circuit Court of Appeals echoes this general principle:

> [Rule] (9)(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the "precise misconduct with which they are charged, and to safeguard defendants against spurious charges" of fraud. . . .  The first sentence of Rule 9(b) requires the identification of the elements of the fraud claim. . . .  Nonetheless, focusing exclusively on the particularity requirement is "too narrow an approach and fails

19

> to take account of the general simplicity and flexibility
> contemplated by the rules."

Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (quoting,

respectively, Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d

786, 791 (3d Cir. 1984), and Wright & Miller, 5 Federal Practice and Procedure, § 1298,

at 407 (1969)).  Indeed, in Seville, the Court of Appeals noted further that "allegations of

'date, place or time' fulfill these [particularity] functions, but nothing in the rule requires

them.  Plaintiffs are free to use alternative means of injecting precision and some measure

of substantiation into their allegations of fraud."  Seville Industrial Machinery Corp., 742

F.2d at 791.[6]

The heightened requirements involved with pleading fraud are tempered not

only by a flexible approach to the rules of federal civil procedure, Craftmatic Securities

Litigation v. Kraftsow, 890 F.2d at 645-46 (remedy for failing to conform with Rule 9(b)

is to allow amendment of the complaint to provide greater specificity, pursuant to Fed. R.

Civ. P. 15); see District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986); Wright

& Miller, 5A Federal Practice and Procedure, § 1298 (2008)), but also in those

circumstances "[w]here it can be shown that the requisite factual information is peculiarly

within the defendant's knowledge or control."  Northwestern Human Services, Inc. v.

Panaccio, 2004 WL 2166293, at *8 (E.D. Pa. 2004).

---

[6]Fed. R. Civ. P. 84 refers to an "Appendix of Forms" accompanying the rules of
civil procedure which are intended to demonstrate "the simplicity and brevity" which the rules of
procedure "contemplate."  See also Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 513 n.4 (2002)
(referring favorably to the official forms as providing a permissible example of the pleading
requirements imposed by Rule 8); In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2005)
(analyzing Official Form 9).  Official Form 13 provides an example of a simple, four-paragraph
complaint that seeks to set aside an intentional fraudulent conveyance.

This approach to application of Rule 9 is particularly appropriate when a fraud claim is brought by a bankruptcy trustee.  The trustee generally has no first-hand knowledge of the prepetition acts that gave rise to the alleged fraud, and the corporation may not cooperate with the trustee in this regard.  See Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 277 B.R. 20, 36-37 (S.D.N.Y. 2002); In re Sverica Acquisition Corp., Inc., 179 B.R. 457, 463 (Bankr. E.D. Pa. 1995); In re Harry Levin, Inc., 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994); 10 Collier on Bankruptcy, ¶ 7009.03, at 7009-4 (15th ed. rev. 2007).

IV.

In seeking dismissal as to various counts of the complaint, the seven defendants assert that the affirmative defense of the statute of limitations bars relief in favor of the trustee; some also raise the business judgment rule.  Generally, affirmative defenses cannot be used to support dismissal under Rule 12(b)(6).  Rather, defendants plead such defenses in their answers to the complaint and can only assert such an affirmative defense at trial or, if no material facts are in dispute, in connection with summary judgment.  See, e.g., Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003); Stirchak v. Shiley, 1996 WL 166958, at *1 (N.D. Ill. 1996); Resolution Trust Corp. v. Fiala, 870 F. Supp. 962, 971 (E.D. Mo. 1994).

Modern federal pleading practice in this circuit, however, accepts that a defendant's limitations defense, or business judgment defense, can be addressed in some circumstances by a Rule 12(b)(6) motion to dismiss.  See In re Tower Air, Inc., 416 F.3d

21

229, 238 (3d Cir. 2005); <u>Flight Systems, Inc. v. Electronic Data Systems Corp.</u>, 112 F.3d

124, 127 (3d Cir. 1997) ("On a Rule 12(b)(6) motion, an affirmative defense, such as the

statute of frauds defense raised by EDS, is appropriately considered only if it presents an

insuperable barrier to recovery by the plaintiff.").

> As explained by the Third Circuit Court of Appeals:
>
> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Rule 12(b) states that "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. . . ." The defenses listed in Rule 12(b) do not include limitations defenses. Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion. However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Hanna v. U.S. Veterans' Admin. Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." <u>Bethel v. Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978).

<u>Robinson v. Johnson</u>, 313 F.3d at 135 (footnote omitted); <u>see</u>, <u>e.g.</u>, <u>In re Coastal Group,</u>

<u>Inc.</u>, 13 F.3d 81, 83 (3d Cir. 1994) (limitations issue raised and considered by a motion to

dismiss under Fed. R. Bankr. P. 7012(b)); 2 <u>Moore's Federal Practice</u>, ¶ 12.34[4][b] (3d

ed. 2007) ("Dismissal under Rule 12(b)(6) may also be appropriate when a successful

affirmative defense or other bar to relief appears on the face of the complaint, such as . . .

the statute of limitations.") (footnote omitted).

However, while a limitations defense may be asserted in the context of a

motion to dismiss, the validity of that defense must be clear from the complaint itself.

22

Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 591 (9th Cir.), cert.

denied, 498 U.S. 824 (1990):

> [W]here the issue of limitations requires determination of
> when a claim begins to accrue, the complaint should be
> dismissed only if the evidence is so clear that there is no
> genuine factual issue and the determination can be made as a
> matter of law.

Accord Askanase v. Fatjo, 1993 U.S. Dist. Lexis 19392, at *11 (S.D. Tex. 1993); see

Continental Collieries v. Shober, 130 F.2d 631, 635-36 (3d Cir. 1942) (statute of frauds

defense was not established on the face of the complaint).

Since the amended complaint in this proceeding concerns actions taken

many years ago, and the trustee's state law claims have limitations periods of two to four

years, the defendants fairly raise limitations issues in their dismissal motions.  To the

extent the trustee's claims for unjust enrichment, breach of fiduciary duty, waste, breach

of contract and breach of confidential relationship are based upon state law, this court

would apply the state limitations periods.  See, e.g., In re Fruehauf Trailer Corp., 250

B.R. 168, 184 (D. Del. 2000); In re MacGregor Sporting Goods, Inc., 199 B.R. 502, 510

(Bankr. D.N.J. 1995); see generally Zlotnick v. Painewebber, Inc., 1992 WL 111383, at

*1 (E.D. Pa. 1992).

Although 11 U.S.C. § 108(a) can extend the limitations period in favor of a

trustee for up to two years, this extension does not apply when the limitations period has

expired prior to the commencement of the bankruptcy case.  See In re National Forge Co.,

344 B.R. 340, 375 (W.D. Pa. 2006); In re Fruehauf Trailer Corp., 250 B.R. at 185; see

also In re Klingshirn, 209 B.R. 698, 702 (B.A.P. 6th Cir. 1997) ("By its language, §

108(c) extends a statute of limitations that would expire while the automatic stay is in

23

effect. . . .  Otherwise, § 108(c)(1) preserves the statute of limitations established under

nonbankruptcy law.").[7]  In other words, if a claim is barred prepetition by the relevant

statute of limitations, a later bankruptcy filing does not resurrect that claim.

        The moving defendants all maintain that the applicable limitations period

for each state law claim expired long before RBI filed its bankruptcy petition on October

7, 2005.[8]  Anticipating such a limitations defense, the trustee pleads in his amended

complaint that the Pennsylvania statutes of limitations were tolled because the defendants

adversely dominated RBI and thereby prevented the debtor from raising these prepetition

claims against them.

        Adverse domination is an equitable tolling doctrine.  Equitable tolling

presumes that a claim has accrued, and it is invoked "to toll, or stop, the running of the

statute of limitations in light of established equitable considerations."  In re Loranger

Mfg. Corp., 324 B.R. 575, 581 (Bankr. W.D. Pa. 2005) (quoting Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1390 (3d Cir. 1994)).  The equitable doctrine

of adverse domination has long been applied in federal courts, see, e.g., Adams v. Clarke,

22 F.2d 957, 959 (9th Cir. 1927), and acts to toll the statute of limitations "for as long as a

corporate plaintiff is controlled by the alleged wrongdoers."  Resolution Trust Corp. v.

Farmer, 865 F. Supp. 1143, 1151 (E.D. Pa. 1994).  "The doctrine is based on the theory

that the corporation which can only act through the controlling wrongdoers cannot

reasonably be expected to pursue a claim which it has against them until they are no

---

        [7]Section 108(a) addresses prepetition claims belonging to the debtor.  Section
108(c) concerns prepetition claims against the debtor.

        [8]The defendants do not maintain that the claims based upon federal bankruptcy
law are untimely.

longer in control."  Id.; see, e.g., Flood v. Makowski, 2004 WL 1908221, at *6 (M.D. Pa.

2004).

      The trustee argues in opposition to defendants' motions to dismiss that the

Pennsylvania limitations periods were tolled until the bankruptcy case was filed and

RBI's directors and officers were removed through the appointment of a chapter 11

trustee.  Thus, he contends that section 108(a) permits him to assert these claims in his

amended complaint.

      In Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991), the Third Circuit

Court of Appeals noted that "Pennsylvania courts have developed certain tolling

principles to 'ameliorate the sometimes-harsh effects' of the statute of limitations."[9]

Adverse domination, however, as the moving defendants observe, has not specifically

been utilized by Pennsylvania courts.  Nevertheless, federal courts have predicted that the

Pennsylvania Supreme Court would adopt that tolling theory if it were raised in the

appropriate factual context.  See In re Adelphia Communications Corp., 365 B.R. 24, 59

(Bankr. S.D.N.Y. 2007) ("For the reasons set forth in Farmer, the Court regards it as

highly likely that the Pennsylvania Supreme Court would apply the doctrine of adverse

domination . . . ."); Resolution Trust Corp. v. Farmer, 865 F. Supp. at 1152 n.7 (and cases

cited therein), 1156; In re Sverica Acquisition Corp., 179 B.R. 457, 470 (Bankr. E.D. Pa.

1995); see also Harmelin v. Man Financial Inc., 2007 WL 2702638, at *13 n.9 (E.D. Pa.

2007).

_____

      [9]Quoting Cathcart v. Keene Indus. Insulation, 324 Pa. Super. 123, 135 (1984) (en
banc).

Pennsylvania has accepted the equitable tolling principle it refers to as the "discovery rule." See, e.g., Fine v. Checcio, 582 Pa. 253 (2005). The tolling doctrine of "adverse domination" has been described as "merely a corollary of . . . [the] discovery rule, applied in the corporate context." Resolution Trust Corp. v. Farmer, 865 F. Supp. at 1154 n.11 (citing In re Lloyd Securities, 153 B.R. 677, 685 (E.D. Pa. 1993)). I agree with other courts that Pennsylvania's Supreme Court would likely accept the doctrine of adverse domination as a basis for tolling its statutes of limitations in appropriate factual circumstances.

Moving defendants, in the alternative, advance several arguments why the adverse domination doctrine should not apply to the prepetition claims, if any, held by RBI against them. The trustee disagrees. It is not necessary to address these arguments at this stage of the litigation. Nor need I now decide which of the two versions of the doctrine would be adopted under state law. Those two versions of the tolling doctrine were noted recently in Harmelin v. Man Financial Inc. 2007 WL 2702638, at *13 n.9:

> There are two basic variations of the adverse domination doctrine: the majority test and complete domination test. Under the majority test, plaintiff must show that a majority of board members were wrongdoers during the period plaintiff seeks to toll the statute of limitations. The complete domination test requires plaintiff to demonstrate that the officers/directors charged with wrongdoing exercised full, complete and exclusive control over the corporation (although they may not necessarily have constituted a majority).
>
> ***
>
> [T]he complete domination test provides for a "broader range of possibilities" than the "majority test" when, for example, a single "truly dominant officer" controls all of a corporation's affairs.

(quoting Resolution Trust Corp. v. Farmer, 865 F.Supp. at 1158 n.14).

26

In order to reach the merits of the defendants' arguments regarding the inapplicability of adverse domination, and the trustee's counter-position, I would have to consider numerous issues of material fact. In the context of a Rule 12(b) motion to dismiss, it is only necessary to find that the trustee pled sufficient facts to invoke the tolling doctrine in his amended complaint, such as to provide the defendants with adequate notice so that they might respond to it in discovery and at trial. See In re Loranger Mfg. Corp., 324 B.R. 575, 581-82 (Bankr. W.D. Pa. 2005):

> The court does not now decide the merits of the adverse domination theory. The court notes only that the theory was a proper objection to J. Loranger's statute of limitations defense. The adverse domination theory raises numerous questions of material fact which cannot be resolved as a matter of law on a motion to dismiss. Oshiver, supra, 38 F.3d at 1391 n.1 (all that is required to defeat a motion to dismiss is that the plaintiff plead doctrine of equitable tolling); In re MacGregor Sporting Goods, Inc. (Levitt v. Riddell Sports, Inc.), 199 B.R. 502, 515 (Bankr. D.N.J. 1995) ("[t]he tolling principles of fraudulent concealment and adverse domination involve questions of fact which cannot be resolved as a matter of law on a motion to dismiss"); In re Sverica Acquisition Corp.(Kaliner v. Load Rite Trailers, Inc.), 179 B.R. 457, 470 (Bankr. E.D. Pa. 1995) ("[s]ince the Trustee has pled facts to raise a claim of control of Debtor by the . . . Defendants, . . ., the Court cannot dismiss the possibility that the equitable tolling doctrine of adverse domination might be applicable in this case. Given that possibility, it is inappropriate to grant the motion to dismiss [a count] as barred by the statute of limitations.").

In the amended complaint, the trustee specifically asserted numerous facts regarding the control of RBI by one or more defendants, as well as the applicability of the doctrine of adverse domination. See Amended Complaint, at ¶ 233 ("These claims were not heretofore discoverable because of the defendants' complete and adverse domination of RBI and their fraudulent concealment. Because of this domination, RBI was unable in

27

the exercise of due diligence to [discover] its injuries or their causes.").  Given the

constraints imposed in deciding Rule 12(b)(6) motions, defendants' arguments that the

various counts of the adversary complaint should be dismissed based on the expiration of

Pennsylvania statutes of limitations are premature at this time.

Similarly premature are certain of defendants' assertions that their actions

as directors of RBI were protected by the state business judgment rule.

The business judgment rule "reflects a policy of judicial noninterference

with business decisions of corporate managers, presuming that they pursue the best

interests of their corporations, insulating such managers from second-guessing or liability

for their business decisions in the absence of fraud or self-dealing or other misconduct or

malfeasance."  Cuker v. Mikalauskas, 692 A.2d 1042, 1046 (1997).

The business judgment rule insulates officers and directors from "judicial

intervention in the absence of fraud or self-dealing, if challenged decisions were within

the scope of the directors' authority, if they exercised reasonable diligence, and if they

honestly and rationally believed their decisions were in the best interests of the company."

Id., at 1048.  In applying the rule, the court should examine the circumstances

surrounding the decisions made by the officers and directors.  Id., at 1048.  These factors

include "whether the board . . . was disinterested, whether it was assisted by counsel,

whether it prepared a written report, whether it was independent, whether it conducted an

adequate investigation, and whether it rationally believed its decision was in the best

interests of the corporation (i.e., acted in good faith)."  Id.  If after analysis of these

factors, the circumstances warrant application of the rule, the court will not analyze the

merits of the decisions in question.  Id.

To overcome the presumption of the business judgment rule, a plaintiff must sufficiently plead that the directors acted in fraud, bad faith or self-interest. Keyser v. Commonwealth Nat'l Financial Corp., 644 F. Supp. 1130, 1145-46 (M.D. Pa. 1986) (citing Enterra v. SGS Associates, 600 F. Supp. 678, 686 (E.D. Pa. 1985)). "Put another way, courts will not disturb the judgment of a board of directors if it can be attributed to any rational business purpose." In re Athos Steel and Aluminum, Inc., 71 B.R. 525, 541 (Bankr. E.D. Pa. 1987) (citing Matter of Reading Co., 711 F.2d 509, 517 (3d Cir. 1983)). See 15 Pa. C.S.A. § 1715(d) ("Absent breach of fiduciary duty, lack of good faith or self-dealing, any act as the board of directors, a committee of the board or an individual director shall be presumed to be in the best interests of the corporation.").[10]

As noted above, the business judgment rule is an affirmative defense, and as such, is not generally applied to trigger dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). See In re Tower Air, Inc., 416 F.3d at 238; In re The Brown Schools, 368 B.R. 394, 401 (Bankr. D. Del. 2007). There is, however, an exception to this basic tenet. The business judgment rule may be considered in the context of a Rule 12(b)(6) motion to dismiss when the applicability of the rule appears on the face of the complaint, and the plaintiff alleges no facts that would defeat the presumption that the rule applies. See In re Tower Air, Inc., 416 F.3d at 238; Fleet Nat. Bank v. Boyle, 2005 WL 2455673, at *16 (E.D. Pa. 2005).

The trustee alleges that the director defendants directly and indirectly benefitted from various transactions in violation of their fiduciary duties to RBI.

---

[10]Thus, the Pennsylvania Business Corporation Law implies that a breach of fiduciary duty renders the business judgment rule inapplicable.

"Where . . . there is a prima facie showing that the directors or majority shareholders have a self-interest in a particular corporate transaction, the business judgment rule does not apply and the burden shifts to the directors to demonstrate that the transaction is intrinsically fair." In re Athos Steel and Aluminum, Inc., 71 B.R. at 541 (also citing Burton v. Exton, 583 F. Supp. 405, 415 (S.D.N.Y. 1984): "[W]hen the stockholders or directors, who control the making of a transaction and its terms, are on both sides, then the presumption and deference to sound business judgment are no longer present. . . . Intrinsic fairness is then the criterion.").[11]

"The test for determining the fairness of any agreement or transaction between a corporation and one of its officers, directors and/or dominant or controlling shareholders is whether 'the transaction carries the earmarks of an arm's length bargain.'"

---

[11]An early example of this principle of Pennsylvania law is found in Hill v. Standard Telephone Manufacturing Co., 198 Pa. 446 (1901), wherein the state Supreme Court affirmed the following holding:

> "[W]here an officer or director, who is a creditor of an insolvent corporation, manages to have his claim preferred over those of other creditors whose debts are equally meritorious, the presumption of equity is that he has taken an unfair advantage of his special knowledge and special power to save himself to their prejudice; and, if he would escape the consequence of this presumption, and hold his preference, he must rebut it by showing that the circumstances of the transaction make it just and right that he should be paid before the other creditors."

See also Pangburn v. American Vault, Safe & Lock Co., 205 Pa. 83, 92 (1903).

Main, Inc. v. Blatstein, 1999 WL 424296, at *13 (E.D. Pa. 1999) (quoting Pepper v.

Litton, 308 U.S. 295, 306-07 (1939)).[12]

There is no basis, considering only the allegations raised by the complaint,

upon which I can now determine that the business judgment rule should or should not

apply.  Compare In re Tower Air, Inc., 416 F.3d at 239 (business judgment rule required

---

[12]Pennsylvania's Business Corporation Law gives specific conditions where an officer or director will not be liable when a corporation transacts with a director or officer or with a corporation in which one or more of its directors or officers are directors or officers or have a financial or other interest.

§ 1728. Interested directors or officers; quorum
 (a) General rule.–A contract or transaction between a business corporation and one or more of its directors or officers or between a business corporation and another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his or their votes are counted for that purpose, if:

(1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

15 Pa. C.S.A. § 1728.

dismissal of breach of fiduciary duty claim when the complaint itself alleges "an

ostensibly legitimate business purpose for an allegedly egregious decision.").  Thus, this

affirmative defense must be prosecuted after discovery has been completed.

V.

I now turn to the specific motions filed by the six defendants without now

determining their statute of limitations or business judgment affirmative defenses, which

two defenses appear to be their primary justifications for dismissal.

SOT, Inc. is named as a defendant in Counts VIII-X, based upon the

trustee's assertion that the agreements between RBI and SOT (which agreements

concerned the assignment of RBI's interests in the Mt. Penn Tower) were improper.  As

mentioned earlier, I will defer SOT's challenge to the legitimacy of those claims until I

have determined SOT's request for an administrative expense, since many of the same

issues are involved.  See In re Downing, 2005 WL 3299797, at *1 n.1 (Bankr. D. Kan.

2005); see also In re North Mandalay Investment Group, Inc., 342 B.R. 846, 847 (Bankr.

M.D. Fla. 2005).

Count XVI, seeking damages (and an accounting) against SOT and others

for utilizing "various RBI employees to undertake work on its behalf" without paying for

those services, is not an issue that will be addressed in SOT's request for an

administrative expense.  Thus, I shall now consider whether the trustee does state a cause

of action against this defendant.

_____Unjust enrichment is an equitable doctrine under Pennsylvania law.  See

Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  Pennsylvania law requires that a

plaintiff prove: (1) "benefits conferred on defendant by plaintiff," (2) "appreciation of

such benefits by defendant," and (3) "acceptance and retention of such benefits under

such circumstances that it would be inequitable for defendant to retain the benefit without

payment of value."  Id. (citing Wolf v. Wolf, 356 Pa. Super. 365 (1986), overruled on

other grounds, Van Buskirk v. Van Buskirk, 527 Pa. 218 (1991)).  Whether the court

should apply the doctrine depends on the particular factual circumstances of each case.

Id.  The court's main focus is on whether the defendant has unfairly benefitted at the

plaintiff's expense.  Id.

Regardless of the legitimacy of the agreements between RBI and SOT, if

the latter utilized goods or services belonging to the former without compensation, and

such goods or services were not provided in accordance with the terms of a contract, then

the defendant may be held liable for the value of such services.  See Schott v.

Westinghouse Electric Corp., 436 Pa. 279, 290-91 (1969); Limbach Co., LLC v. City of

Philadelphia, 905 A.2d 567, 574-75 (Pa. Cmwlth. 2006).  Accordingly, the amended

complaint states a cause of action as to Count XVI.

Finally, Counts XVII-XVIII seek to disallow SOT's unsecured claim filed

in this chapter 11 case and, if allowed, to subordinate that claim to unsecured creditors

under 11 U.S.C. § 510(c).  Equitable subordination under section 510(c) requires at least

three elements:

> (1) the claimant must have engaged in some type of
> inequitable conduct, (2) the misconduct must have resulted in
> injury to the creditors or conferred an unfair advantage on the
> claimant, and (3) equitable subordination of the claim must

not be inconsistent with the provisions of the bankruptcy
code.

<u>Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims</u>,

160 F.3d 982, 986-87 (3d Cir. 1998).  Furthermore, relief under section 510(c) should be

tailored to offset the harm caused by the inequitable conduct.  <u>In re Submicron Systems</u>

<u>Corp.</u>, 432 F.3d 448, 462 (3d Cir. 2006).

Although it is less clear that all the facts and legal issues surrounding this

section 510(c) claim will be determined by SOT's administrative expense request (and the

trustee's objection thereto) some may be so resolved.[13]  Therefore, I will defer this

challenge to a later date.

Defendants' Cohen and Helene Associates filed a joint motion to dismiss.

Mr. Cohen is named as a defendant in Counts I-IV, VIII-X, XII-XIV, XVI, and XIX;

Helene Associates is named as defendant in Counts XVII-XVIII.

Counts I-III seek relief against Mr. Cohen for allegedly acting improperly,

and counter to the interests of RBI, while serving as a director of the debtor corporation.

The trustee alleges in his amended complaint that Mr. Cohen became a director in

October 1991.  The trustee also challenges certain actions taken by the directors of RBI

prior to that date: transfer of RBI stock to Partel (¶ 104); and the RBI assignment of the

Mt. Penn lease to SOT in August 1991 (¶¶ 115-16).

Mr. Cohen, who is a shareholder in SOT (¶ 14), does not dispute that

corporate directors owe fiduciary duties to their corporation under Pennsylvania law.  <u>See</u>

_____

[13]The trustee does acknowledge that SOT transferred at least $175,000 to RBI.
Therefore, even if the debtor's assignment of its interest in the Tower were invalidated, SOT
could have a claim for the amount it paid to RBI.

34

15 Pa. C.S.A. § 1712; <u>Seaboard Industries, Inc. v. Monaco</u>, 442 Pa. 256 (1971); <u>In re</u>

<u>Insulfoams, Inc.</u>, 184 B.R. 694, 707 (Bankr. W.D. Pa. 1995).  Nor does he deny that

corporate directors who breach their duty to the corporation through improper self-

enrichment, <u>see</u> <u>Seaboard Industries, Inc. v. Monaco</u>, 442 Pa. at 262, or improper

disposition of corporate assets, <u>see</u> 15 Pa. C.S.A. § 1553; <u>Simms v. Exeter Architectural</u>

<u>Products, Inc.</u>, 868 F. Supp. 668, 673 (M.D. Pa. 1994); <u>White v. George</u>, 66 Pa. D. &

C.4th 129, 149 (Pa. Com. Pl. 2004) (citing 13 Summ. Pa. Jur. 2d Business Relationships

§11:24), can be held personally liable.  <u>See</u> <u>In re Specialty Tape Corp.</u>, 132 B.R. 297, 301

(Bankr. W.D. Pa. 1991).

  In addition, corporate directors may breach their duty of loyalty "directly or

indirectly, [by utilizing] their position to obtain any personal profit or advantage other

than that enjoyed by their fellow shareholders."  <u>Committee of Unsecured Creditors of</u>

<u>Specialty Plastic v. Doemling</u>, 127 B.R. 945, 951 (W.D. Pa. 1991).  Specifically, directors

of a corporation may not usurp a business opportunity within the scope of the

corporation's activities for their own personal gain.  <u>See</u> <u>In re Insulfoams</u>, 184 B.R. 694,

707 (Bankr. W.D. Pa. 1995); <u>CST, Inc. v. Mark</u>, 539 A.2d 811 (Pa. Super. 1987).[14]

  Mr. Cohen (who does not concede any breach of duty) fairly argues,

though, that he could not be held liable for any breach of duty or improper self-dealing for

corporate actions taken before he became a director and owed any duty to RBI.  <u>See</u>

<u>Ebbert v. Plymouth Oil Co.</u>, 348 Pa. 129, 137 (1943).  Counts I-III, however, contain

---

[14]An officer or director may take a business opportunity of the corporation for
himself if the corporation is incapable of taking advantage of the opportunity.  <u>In re Insulfoams,</u>
<u>Inc.</u>, 184 B.R. at 707.  Some defendants allege that this circumstance occurred in connection with
the Tower assignment to SOT.  But such factual allegations cannot be considered in the context
of a motion to dismiss.

allegations of corporate wrongdoing that occurred after October 1991. See, e.g.,

Amended Complaint, ¶¶ 141, 144, 146, 152-55, 169, 180, 186, 190, 205, 209, 234, 247,

260, 270. These allegations, which must be accepted as true for purposes of a motion to

dismiss, support the causes of actions raised by counts I-III against defendant Cohen.

As to Count IV, Mr. Cohen complains that it does not contain sufficient

specificity under Rule 7009. Upon review, I disagree. Insofar as Mr. Cohen contends

that no cause of action for fraud is stated by the trustee to the extent he challenges in

Count IV stock transfers made by non-debtor entities or individuals, he may be correct.

See In re Plassein Intern. Corp., 366 B.R. 318, 326 (Bankr. D. Del. 2007) (holding that a

fraudulent conveyance claim cannot be maintained when there is no allegation that the

debtor made the transfer); In re Felt Mfg. Co., Inc., 371 B.R. 589, 638 (Bankr. D.N.H.

2007) ("In seeking to avoid transfers under both the UFTA and 11 U.S.C. § 548, the

Committee must allege that [the debtor] made transfers of its property to someone.").

However, in reviewing the allegations of Count IV, the trustee incorporates,

inter alia, ¶¶ 153 and 155 of the amended complaint. Therein, the trustee asserts that in

June 1996 shares of RBI stock were issued to SWOB for no consideration and that

SWOB then transferred these shares to SWOB's shareholders, which included Mr.

Cohen. Amended Complaint, ¶ 151. As I must accept these allegation as true, and as an

immediate transferee may be liable for a fraudulent conveyance, see 12 Pa. C.S.A. §

5108; 11 U.S.C. § 550(a)(2), or unjust enrichment, see A. Brod Inc. v. SK & I Co.,

L.L.C., 998 F. Supp. 314, 327 (S.D.N.Y. 1998), a cause of action is stated. See generally

In re Allou Distributors, Inc., 379 B.R. 5, 29-31 (Bankr. E.D.N.Y. 2007).

36

In Counts VIII-X, the trustee asserts that defendant Cohen (as well as other defendants, including Parker) as SOT shareholders were transferees from SOT of improper payments received from RBI.  If the payments to SOT were proper, as SOT maintains, then the trustee would state no cause of action regarding any subsequent transfers to shareholders.  As I have deferred that issue pending the outcome of SOT's administrative expense request, I shall defer Mr. Cohen's present dismissal motion as well (and that of defendant Parker).

Counts XII-XIV involve transfers of funds allegedly made to SWOB, Inc. by RBI that the trustee asserts were improper as fraudulent or preferential, or that constitute unjust enrichment under Pennsylvania law.  Mr. Cohen is named as a defendant due to his stock ownership in SWOB.[15]  Mr. Cohen accurately contends that the trustee does not maintain that he was an alter ego of SWOB, and thus claims against SWOB would not state claims against him.  See Powers v. Lycoming Engines, 2007 WL 2702705, at *5 (E.D. Pa. 2007).  Nonetheless, the trustee does allege that the SWOB shareholders, including Mr. Cohen, were the immediate transferees from SWOB.  As I must accept this allegation as true, and, as just noted above, an immediate transferee may be liable for a preference, fraudulent conveyance or unjust enrichment, causes of action are stated.

Count XVI, raised against Mr. Cohen as a shareholder of SOT, raises issues of unjust enrichment but does not contain allegations of alter ego status.  It does imply immediate transferee status.  As such, Count XVI states a cause of action (but the trustee could not recover both from SOT as well as its shareholders).

---

[15]He may also be named as an initial transferee in Count XIV.

37

The two claims against Helene Associates, Counts XVII and

XVIII—equitable subordination and objection to claim—appear to be based upon factual

allegations contained only in ¶¶ 203 and 215.  The first paragraph alleges that RBI

borrowed money from Helene Associates to pay the law firm of Holland & Knight when

the latter offered to compromise its fees if paid promptly and RBI did not have sufficient

funds of its own.  The second paragraph contends that the amount borrowed, $110,000,

was obtained through a promissory note signed by RBI that "bore interest at the usurious

rate of 29%" and contained a confession of judgment clause.  The trustee also asserts that

defendant Cohen is the president of Helene Associates.

Neither provision of the promissory note violates Pennsylvania law.  See

generally 15 Pa. C.S.A. § 1510; Germantown Sav. Bank v. Talacki, 441 Pa. Super. 513,

520 (1995).  Nor does the trustee assert any facts asserting that Helene Associates should

be treated as the alter ego of Mr. Cohen.  See generally Plastipak Packaging, Inc. v.

DePasquale, 2003 WL 22120971, at *1 (3d Cir. 2003) (unpublished); see Kaplan v. First

Options of Chicago, Inc., 19 F.3d 1503, 1520-21 (3d Cir. 1994), aff'd, 514 U.S. 938

(1995).  And none of the factual allegations would justify equitable subordination.  See

generally In re After Six, Inc., 177 B.R. 219, 231-32 (Bankr. E.D. Pa. 1995).  Therefore,

the motion to dismiss filed by Helene Associates will be granted as to Counts XVII and

XVIII, both of which claims are considered to be "core" under 28 U.S.C. § 157.

However, the trustee will be afforded a limited opportunity to plead a valid cause of

action against this defendant if he can do so in good faith.  See, e.g., Redfield v.

Continental Casualty Corp., 818 F.2d 596, 610 (7th Cir. 1987) (granted leave to further

amend an amended complaint to state a cause of action); In re Troll Communications,

38

LLC, 2008 WL 901173, at *7 (Bankr. D. Del. 2008) (same); In re Sverica Acquisition

Corp., Inc., 179 B.R. 457, 465 n.9 (Bankr. E.D. Pa. 1995) (same).

Mr. Stevens is named as a defendant in Counts I-III due to his role as a

director of the debtor.  In his motion for judgment on the pleadings, he alleges that he

became a director only in March 2001 and had no duty to RBI prior to that date.

Therefore, improper conduct of the board of directors, if any, prior to that date cannot be

his responsibility.

The amended complaint, however, asserts that Mr. Stevens was a board

member "at all relevant times."  Amended Complaint, ¶ 65.  It also alleges that Mr.

Stevens was a consultant to SOT and that a corporation Stevens owned acted as SOT's

management agent.  Id., ¶ 67.  The trustee further contends that a 2003 agreement

between SOT and RBI, in which Stevens played a role in its execution, was intended to

be detrimental to the interests of RBI, and beneficial to SOT and Stevens.  Id., ¶¶ 68-69,

193-95.  As I must accept the allegations of the amended complaint and the inferences

therefrom, causes of action are asserted against defendant Stevens, and so his motion for

judgment on the pleadings must be denied.  In so ruling, as with the other defendants, I

defer resolving his affirmative defenses of statute of limitations and the business

judgment rule.  I also agree that the trustee may not be able to establish his liability for

actions taken by RBI directors before Mr. Stevens joined the board.

Defendants Parker and Partel, who are named as defendants in many of the

19 counts, raise numerous grounds for dismissal.  Their statute of limitations and business

judgment rule affirmative defenses cannot be considered at this time, as mentioned

previously.  And to the extent they complain that the trustee has sought equitable relief

39

against them when damages would lie, I view the trustee as pleading in the alternative.

See Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 265 (E.D.

Pa. 2007) ("[C]ourts have permitted plaintiffs to pursue alternative theories of recovery

based both on breach of contract and unjust enrichment, even when the existence of a

contract would preclude recovery under unjust enrichment.").  The trustee will not be

permitted to obtain duplicative recovery for one injury.

        Similarly, their defense of in pari delicto is premature.  As with other

affirmative defenses, it may only be considered in the context of a motion to dismiss if it

"is established on the face of the complaint."  Leveto v. Lapina, 258 F.3d 156, 161 (3d

Cir. 2001).  And this affirmative defense is not appropriate where the complained of

actions of the corporation were adverse to the corporation and not for its benefit.  See,

e.g., In re the Personal and Business Insurance Agency, 334 F.3d 239, 243 (3d Cir. 2003);

Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 358-59

(3d Cir. 2001).  Here, the amended complaint contains allegations that, if proven at trial,

render application of the in pari delicto defense unwarranted.

        In addition, defendant Parker's challenge to Count XV raises factual issues

that cannot be resolved under Rule 12(b)(6).  If it is proven that he took RBI's personal

property, a claim for conversion and turnover may lie.  See In re U.S. Physicians, Inc.,

235 B.R. 367, 376 (Bankr. E.D. Pa. 1999); see generally Maggio v. Zeitz, 333 U.S. 56

(1948).  His additional argument that RBI's bylaws preclude certain claims against him is

unlikely to be persuasive as to breaches of fiduciary duties or intentional misconduct; in

any event, this argument will also involve factual analysis and so is premature.

40

As did Mr. Cohen, defendants Parker and Partel complain that the trustee cannot state a cause of action for fraudulent conveyance involving transfers of stock that they owned.  While I agree with this assertion in principle, the trustee does state a claim for fraud, such as in Count IV, where he alleges that the defendants were the immediate transferees of a fraudulent transfer of RBI stock.  To the extent Mr. Parker was the immediate transferee from SOT or SWOB of fraudulent or preferential transfers, or unjust enrichment, he may be held liable.  The discussion of Mr. Cohen's motion is applicable to Mr. Parker.

Lastly, without citation, defendant Parker contends that a chapter 11 trustee has no standing to subordinate one shareholder's interest to another under section 510(c), as he attempts to do in Count XIX.  Given the terms of the trustee's confirmed plan of liquidation, which may not provide for any dividend to shareholder interests, I decline to address this issue at this time.

Finally, Mr. Reith's motion to dismiss simply incorporates the motions filed by Mr. Cohen and Mr. Parker.  Mr. Reith is named as a defendant in Counts I-IV, and Count XIX.

I too shall incorporate my analysis and deny his motion to dismiss for the reasons above stated as to Counts I-III and Count XIX.  As to Count IV, the trustee incorporates ¶ 46 of the amended complaint, which asserts that Mr. Reith held RBI shares that were transferred for little or no consideration.  This, coupled with the other allegations found in Count IV states a cause of action.  Thus, Mr. Reith's motion to dismiss shall be denied.

An appropriate order shall be entered.

41

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| READING BROADCASTING, INC. | : | |
| Debtor | : | Bankruptcy No. 05-26563bif |

_____

| | | |
|---|---|---|
| GEORGE L. MILLER, trustee | : | |
| Plaintiff | : | |
| v. | : | |
| MICHAEL L. PARKER, SR.; PARTEL, INC.; IRVIN COHEN; ROBERT E. REITH; JACK A. LINTON; GEORGE A. MATTMILLER; LEONARD B. STEVENS; SOT, INC.; SWOB, INC.; BERNARD R. GERBER; HELENE ASSOCIATES, L.P.; ROGER N. LONGENECKER; and ESTATE OF ROBERT H. CLYMER | : : : : : : | |
| Defendants | : | Adversary No. 06-0643 |

_____

.................................................

ORDER

.................................................

AND NOW, this 12th day of May 2008, upon consideration of the motions

to dismiss filed by defendants Micheal L. Parker, Partel, Inc. Irwin Cohen, Helene

Associates, SOT, Inc. and Robert E. Reith, and the motion for judgment on the pleadings

filed by defendant Leonard B. Stevens,

And for the reasons stated in the accompanying memorandum,

It is hereby ordered that the motions to dismiss filed by defendants Parker,

Partel, SOT, Cohen, Helene Associates, and Reith and defendant Stevens' motion for

judgment on the pleadings, all submitted under Fed. R. Bankr. P. 7012, are denied or

deferred (pending the adjudication of SOT's motion for allowance of an administrative

claim), except that Counts XVII and XVIII against Helene Associates are dismissed.

It is further ordered that the trustee has leave to file and serve within 15

days from the date of this order a second amended complaint as to Helene Associates

only.  Helene Associates shall have ten days thereafter to respond to that second amended

complaint.

Defendants Parker, Partel, SOT, Cohen, Reith and Stevens shall file an

answer to the trustee's amended complaint within 20 days from the date of this order.

Such answer is without prejudice to their renewing (on a timely basis) their requests to

dismiss prior to trial Counts VIII-X and XVII-XVIII, if warranted, based upon the

forthcoming adjudication of SOT's request for allowance of an administrative expense.


_____
BRUCE FOX
United States Bankruptcy Judge


copies to:

Peter C. Hughes, Esq
Jennifer Maleski, Esq.
Dilworth Paxson LLP
1735 Market Street, 32nd Floor
3200 Mellon Bank Center
Philadelphia, PA 19103

Henry F. Siedzikowski, Esq.
Brian R. Elias, Esq.
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive
P.O. Box 3010
Blue Bell, PA 19422

Mr. Micheal L. Parker, Sr.
22720 S.E. 410th Street
Enumclaw, Wash. 98022

Partel, Inc.
22720 S.E. 410th Street
Enumclaw, Wash. 98022

John F. O'Riordan, Esq.
O'Riordan Law Firm
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

Rona Zucker Kaplan, Esq.
Cooper, Levenson April Niedelman & Wagenheim
1125 Atlantic Avenue
Atlantic City, NJ 08401

Charles J. Phillips, Esq.
Eden R. Bucher, Esq.
Leisawitz Heller Abramowitch Phillips, P.C.
2755 Century Blvd.
Wyomissing, PA 19610